UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

|  |  |
|---|---|
| AMERICAN SIGNATURE, INC., *et al.*,<br><br>              Plaintiffs,<br><br>     - *against* -<br><br>MOODY'S INVESTORS SERVICES, INC., *et al.*,<br><br>              Defendants. | 1:10-cv-05095-PGG<br><br>Defendants' Opposition to Plaintiffs'<br>Motion for Leave to File a<br>Supplemented First Amended<br>Complaint |

Pursuant to the Court's Order of September 13, 2012, Defendants The McGraw-Hill Companies, Inc. and Standard & Poor's Financial Services LLC (together, "S&P") and Defendant Moody's Investors Service, Inc. (collectively, the "Rating Agencies") hereby oppose Plaintiffs' October 7, 2011 motion for leave to supplement the First Amended Complaint (the "Motion to Supplement").

## PRELIMINARY STATEMENT

This case concerns Auction Rate Securities ("ARS") purchased by Plaintiffs between February 2005 and July 2007 which Plaintiffs claim became "illiquid" following a widely-publicized ARS market collapse in February 2008.  Plaintiffs assert claims against the Rating Agencies for fraud, negligent misrepresentation and violation of the Ohio blue sky laws.  They base those claims exclusively on the credit ratings assigned by the Rating Agencies to the ARS that they purchased.  *See, e.g.*, Plaintiffs' Opposition to the Rating Agencies Motion to Dismiss ("Opp.") at 17, 29 & 29 n.12.  As demonstrated by Defendants' Motion to Dismiss the First Amended Complaint ("Motion to Dismiss"), Plaintiffs' allegations fail to state a claim as a matter of law for numerous reasons, including that:  the credit ratings they seek to challenge represent forward-looking opinion statements that are not actionable as misstatements of fact;

Plaintiffs have not alleged any facts indicating that the credit ratings assigned to their ARS were issued with scienter; and Plaintiffs cannot demonstrate that the unidentified loss they claim to have suffered as a result of their securities' *illiquidity* may reasonably be attributed to the Defendants' opinions regarding the *creditworthiness* of the securities at issue.   Seeking to extrapolate factual allegations regarding the credit ratings actually at issue in this case from general, public discussion of the structured finance market as a whole, each of Plaintiffs' two prior complaints already devotes significant space to a recitation of public criticism regarding either credit rating agencies generally or the credit ratings assigned to categories of securities that Plaintiffs did *not* purchase and that are not at issue in this case.   Defendants have addressed the legal insufficiency of such allegations at length in their Motion to Dismiss, which was fully briefed roughly nineteen months before Plaintiffs asked this Court for leave to supplement their complaint.   *See, e.g.*, Motion to Dismiss at 14-16;[1] Reply at 8-9.[2]   In the interim, the Court of Appeals for the Second Circuit has also affirmed the dismissal, discussed in further detail below, of a negligent misrepresentation claim brought against the Rating Agencies exclusively on the basis of rating opinions regarding the same type of ARS at issue in this case, including some of the exact same issues.   The Second Circuit's decision confirmed that where, as here, a plaintiff makes no allegation of any direct contact with the defendants at issue, the complaint fails to state

---

[1]   "[T]he generalized, after-the-fact criticisms Plaintiffs cite in the FAC relate to ratings models and methodologies for securities that are *not* ARS, but instead debt secured directly by pools of residential mortgage loans (*i.e.*, RMBS). . . .   Indeed, other than the bare-bones list information in paragraph 91 [of individual security CUSIPs held by Plaintiffs in January 2008], the FAC contains not a single factual allegation concerning any of the specific securities allegedly purchased."

[2]   "[T]he FAC alleges only that former Rating Agency employees and unaffiliated industry commentators have recently criticized the Rating Agencies with regard to their rating of RMBS and CDOs. This is insufficient to establish any actionable misstatement. Moreover . . . the after-the-fact comments on which Plaintiffs rely do not even address the type of securities that Plaintiffs actually purchased, let alone the specific securities at issue. These allegations are simply insufficient to render plausible Plaintiffs' claims regarding the alleged falsity of the *ARS* ratings at issue. Plaintiffs attempt to gloss over this discrepancy by referring to ARS, and other types of securities, collectively as 'structured' securities. (Opp. at 25.) But a review of the actual statements in the FAC makes clear that none of these after-the-fact comments discuss ARS, let alone the specific ARS purchased by Plaintiffs."

a claim for negligent misrepresentation as a matter of law. *See Anschutz Corp.* v. *Merrill Lynch*, No. 11-1305, 2012 WL 3518537, at *12 (2d Cir. Aug. 14, 2012) (amended Aug. 16, 2012).[3]

Because Plaintiffs' Motion to Supplement seeks merely to include in the Complaint voluminous additional material repeating the same criticisms already asserted — unconnected to the actual securities or ratings at issue — the motion is futile and should be denied.

## ARGUMENT

Rule 15 of the Federal Rules of Civil Procedure empowers this Court to permit the service of a supplemental pleading setting out any transaction, occurrence, or event that post-dates the pleading to be supplemented. *See Jackson* v. *Odenat*, No. 09 Civ. 5583 (JFK), 2012 WL 505551, at *2 (S.D.N.Y. Feb. 14, 2012) (quoting Fed. R. Civ. P. 15(d)). As Plaintiffs acknowledge in their October 7, 2011 Brief, the standard for evaluating whether such leave should be granted is the same standard applicable to a motion for leave to amend, so that a motion for leave to supplement may properly be denied in cases of "repeated failure to cure deficiencies by amendments previously allowed . . . [and] futility of amendment." *Cohain* v. *Klimley*, Nos. 08 Civ. 5047, 09 Civ. 4527 (PGG), 2011 WL 3896095, at *2 (S.D.N.Y. Aug. 31, 2011) (quoting *Ruotolo* v. *City of New York*, 514 F.3d 184, 191 (2d Cir. 2007)). "Where the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." *Id.  See also Michalek* v. *Amplify Sports & Entertainment, LLC*, No. 11 Civ. 508 (PGG), 2012 WL 2357414, at *2 (S.D.N.Y. June 20, 2012) ("A trial court does not abuse its discretion in denying leave to

---

[3]  The Court of Appeals further noted that where, as here, the ratings at issue were prepared and issued in New York by New York-based defendants, in connection with a sale of securities that occurred in New York, New York's "long-standing interest in applying its own standards for negligence liability to the New York financial community" impels the application of New York law.  2012 WL 3518537, at *11-12.

amend a complaint which even as amended would fail to state a cause of action.) (quoting *S.S. Silberblatt, Inc.* v. *East Harlem Pilot Block*, 608 F.2d 28, 42 (2d Cir. 1979)).

Plaintiffs assert in the present motion that, "[s]ince the First Amended Complaint was filed in December 2009, authoritative new information [ ] has come to light that further supports [their] allegations." Pl. Mem. of Law in Support of Their Motion For Leave to File a Supplemented First Amended Complaint ("Oct. 7, 2011 Brief"), at 3. However, close review of the additional material that Plaintiffs propose to incorporate makes clear that none of the three "new" documents on which Plaintiffs seek to rely describes a recent development relevant to Plaintiffs' claims or addresses the defects outlined in Defendants' Motion to Dismiss.[4] As detailed below, two of the documents Plaintiffs seek to incorporate comprise public congressional reports that offer no demonstrable connection to the allegations at issue in this case beyond their inclusion of S&P and Moody's in an expansive summary of national events that preceded the 2008 financial crisis.[5] The third document that Plaintiffs ask this Court to consider is a September 2011 Form 8-K filed by S&P that discusses an SEC review of a Collateralized Debt Obligation rated in 2007, one of thousands of S&P-rated securities that Plaintiffs did *not* purchase and that is entirely unrelated to Plaintiffs' claims. For multiple reasons, each of these proposed supplements to the Complaint would be futile.

*First,* none of the material that Plaintiffs seek to insert in the Complaint addresses ARS or the credit rating process for ARS, and so none qualifies as a plausible factual allegation regarding Moody's or S&P's ratings of the ARS at issue in this case. To the contrary, many of

---

[4] One purportedly "new" document was publicly released *a year and six months* before the filing of Plaintiffs' Motion to Supplement; a second was publicly released *nine months* before.

[5] Plaintiffs themselves characterize the first of their three "new" sources (the Financial Crisis Inquiry Report) as a "book-length report" on "the causes of the collapse of major financial institutions that failed — or would have failed if not for exceptional assistance from the federal government." *See* First Amended and Supplemented Complaint, at

4

the quotes that Plaintiffs seek to include in their proposed First Amended and Supplemented Complaint make express and exclusive reference to non-ARS securities such as RMBS or CDOs, or to aspects of a structured finance rating analysis that are nowhere implicated by Plaintiffs' claims in this case.  *See, e.g.*, First Amended and Supplemented Complaint at ¶¶ 46, 48 (describing a "CDO machine"), ¶ 52 (quoting testimony by a former Moody's employee about "a particular CDO" and the "environment in the CDO group"), ¶ 54  (quoting email correspondence among S&P employees in the Servicer Evaluation Group), ¶ 69 (quoting Senate Report conclusions about the impact of conflicts and outdated rating models on "RMBS and CDO credit ratings").  *See also* Oct. 7, 2011 Brief, at 4-5 (quoting excerpted text from the Senate PSI Report that discusses "increasing risk in the RMBS and CDO markets").

*Second,* none of the material that Plaintiffs seek to insert in the Complaint even acknowledges the singular market event, wholly ignored by their previous two complaints as well, that is indisputably responsible for the illiquidity of their investments:   namely, the publicly-acknowledged collapse of the ARS market in 2008.[6]   As set forth in Defendants' Motion to Dismiss, this omission is fatal to any attempt to plead the necessary loss causation element to Plaintiffs' claims and Plaintiffs' proposed First Amended and Supplemented Complaint is therefore futile for this reason as well.

---

¶ 26.  Plaintiffs do not identify the connection between a congressional review of federal bailouts for particular U.S. corporations and the credit ratings assigned to the ARS that Plaintiffs purchased between 2005 and 2007.

[6] *See* Motion to Dismiss at 6 ("An even more glaring omission from the FAC is any recognition of the collapse of the *entire* ARS market in February 2008) (emphasis in original); *id.* at 25 ("Plaintiffs' FAC completely ignores the precipitous collapse of the ARS market in February 2008 and the global credit market crisis as obvious alternative explanations to the alleged 'fraud.'  Indeed, Plaintiffs essentially ask the Court to accept that the ARS they purchased existed in a vacuum and became 'unmarketable' solely because of alleged deficiencies in their credit ratings (notwithstanding the absence of any alleged credit event) rather than as a result of the collapse of the ARS market generally."); Reply at 10 ("[S]trikingly absent from this causation theory is the 'truth' that was allegedly revealed about the [ARS] credit ratings in February 2008 and that purportedly led to the ARS market collapse and Plaintiffs' damages."); *id.* at 11 ("[A]s demonstrated in Defendants' Opening Brief, the FAC ignores entirely that other plausible reasons for the collapse — having nothing to do with the allegations here — have been documented in numerous government reports.").

***Third,*** none of the material that Plaintiffs seek to insert in the Complaint suggests —
because it could not — that the credit ratings assigned to Plaintiffs' ARS ever spoke to the
liquidity of Plaintiffs' investment or the suitability of such securities for an investment plan that
Plaintiffs themselves characterize as intended "to permit investment of their cash in only safe and
liquid 'cash equivalent' securities." FAC ¶ 4.[7] Even with Plaintiffs' proposed insertions, then,
the allegations in Plaintiffs' complaint would amount to no more than a claim that the ARS
securities purchased for Plaintiffs were *unsuitable* investments for them given their explicit
investment objectives.  As Defendants have repeatedly emphasized in prior submissions, this
claim is not properly asserted against the Rating Agencies that merely issued credit rating
opinions that Plaintiffs have conceded do "not constitute a recommendation to buy, sell or hold a
particular security" or "comment on the suitability of an investment for a particular investor."
*See* Motion to Dismiss at 2 (quoting FAC ¶ 38).

***Fourth,*** Plaintiffs' proposed First Amended and Supplemented Complaint also fails to
address the extensive authority provided to this Court since 2010 that highlights recent state and
federal court dismissal of claims identical to those asserted here that involved the very kind of
generalized, hindsight commentary that Plaintiffs now seek to insert into a supplemented
complaint. *See, e.g.*:

- Letter from F. Abrams (Dec. 7, 2010) (attaching the opinion in *Federal Home Loan Bank of Pittsburgh* v. *J.P. Morgan Securities LLC et al.*, Case No. GD09-016892 (Pa. C.P. Allegheny Cnty. Nov. 29, 2010), which dismissed claims against the Rating Agencies for negligent misrepresentation and expressly held that "[o]pinions predicting the future relating to matters of public concern cannot be the basis of a negligent misrepresentation claim");

---

[7] *See In re Merrill Lynch Auction Rate Securities Litigation*, No. 09-MD-2030, 2011 WL 536437, at *13 (S.D.N.Y. Feb. 9, 2011) (holding that, "notwithstanding Plaintiff's assertions to the contrary, the ratings themselves did not discuss liquidity") ("As the Rating Agencies point out, the SEC rules Plaintiff cites to demonstrate that a high rating equates with liquidity 'merely recognize some general correlation between a strong rating and a strong market for a security; they do not suggest . . . that a strong credit rating is itself a *representation* of any kind about liquidity. There was no representation about liquidity to form the basis for the claim here.") (citation omitted; emphasis in original).

- Letter from F. Abrams (Dec. 22, 2010) (attaching a December 13, 2010 decision from the Southern District of Ohio in *In re National Century Financial Enterprises, Inc. Investment Litigation*, Case No. 2:03-md-1565, that granted summary judgment dismissal of secondary liability claims identical to the Ohio Securities Act claim in Count III of Plaintiffs' FAC where, as here, the security sales at issue "occurred wholly outside of Ohio" such that "applying Ohio Revised Code § 1707.43 to the transactions would violate the extraterritoriality principle of the Commerce Clause");

- Letter from F. Abrams (Jan. 28, 2011) (noting a January 21, 2011 opinion from the Court of Appeals for the First Circuit in *Plumbers' Union Local No. 12 Pension Fund* v. *Nomura Asset Acceptance Corp.*, Case No. 09-2596, that affirmed the dismissal in part of federal securities law claims based on allegations deemed insufficient to plead that a credit rating was "false or misleading") ("Notwithstanding plaintiffs' allegations that rating agency executives conceded, in hindsight, 'that the models and data the rating agencies were using were deficient,' the Court explain[ed], 'the ratings were not false or misleading because rating agencies should have been using better methods or data. Defendants are not liable under the securities laws when their opinions, or those they reported, were honestly held when formed but simply turn out later to be inaccurate; nor are they liable only because they could have formed "better" opinions.'");

- Letter from F. Abrams (Aug. 8, 2011) (reviewing the Aug. 1, 2011 dismissal of a complaint filed in New York Supreme Court in *Abu Dhabi Commercial Bank, P.J.S.C.* v. *Credit Suisse Securities (USA) LLC*, Index No. 115417/2010, that asserted causes of action against S&P for fraud and negligent misrepresentation based solely on the S&P credit rating opinions issued to certain securities purchased by the plaintiff) ("Plaintiffs in this action [*American Signature*] base their fraud claims on precisely the same theory of alleged conflicts of interest and inadequate methodologies. As Justice Sherwood's opinion explains, '[n]either of these allegations rises to the level of conduct that would be sufficient to state a cause of action for fraud . . . . S&P's then-used and now-questioned compensation model was well-known in the financial services industry and was readily discoverable by plaintiff with a modest measure of due diligence. Similarly, S&P's use of allegedly inferior rating methodology does not constitute fraud.'").

Two among the numerous letters recently submitted to this Court warrant particular note: on September 28, 2011, the Rating Agencies wrote to bring to the Court's attention a recent decision from the United States District Court for the District of Ohio holding that "(i) the Rating Agencies could not be liable under sections 1707.41 and 1707.43 of the Ohio Securities Act for their work in connection with ratings assigned to certain mortgage-backed securities; (ii) the

7

Rating Agencies did not owe a duty of care to plaintiff-purchasers the Ohio Funds under New York or Ohio law; and (iii) the ratings assigned to the plaintiffs' purchased securities were not actionable misrepresentations." *See* Letter from F. Abrams (Sept. 28, 2011) (citing *Ohio Police & Fire Pension Fund* v. *Standard & Poor's Financial Services, LLC*, Case No. 09-cv-1054-JLG-TPK, slip. op. (S.D. Ohio Sept. 26, 2011) ("*Ohio Police & Fire*")).  As that letter explained, the Ohio District Court applied the same standards outlined in support of the Rating Agencies' motion to dismiss the First Amended Complaint in this action to conclude that the plaintiff-investors before it could not state a claim under the very Ohio blue sky law provisions that Plaintiffs assert here "because that statute's provisions 'so clearly d[id] not apply to the situation at hand.'  The rating agencies were not, as the [*Ohio Police & Fire* plaintiffs] contended, 'sellers of securities,' and they had not received profits from the sale of any rated security.  Nor had the plaintiffs alleged any primary violation of the Act by the issuers of their securities that would permit recovery from the rating agencies as co-participants in or aiders of a targeted sale.'" *Id.* at 1-2 (citations omitted).  Defendants' letter further noted the Ohio District Court's conclusion that the plaintiffs' negligent misrepresentation claim failed as a matter of law, "no matter whether New York or Ohio law appli[ed]," because plaintiffs had not alleged the "special relationship" necessary to trigger a duty of care under either New York's privity rule or Ohio's Restatement standard, and had not supported their assertion of membership in a "limited class of qualified investors to whom [d]efendants intended their ratings be supplied" with any factual allegations that could "circumscribe the class." *Id.* at 2.  Finally, the letter quoted the Ohio District Court's assessment that: "plaintiffs had effectively conceded that the ratings at issue were 'predictive opinions' but failed to allege, as required by both Second and Sixth Circuit law, that the rating agencies 'did not believe their ratings.'"  The public materials and hindsight analyses cited in the *Ohio Police & Fire* complaint did not amount to "issuance-specific allegations that the Rating

Agencies . . . knew that the ratings for each of the . . . securities purchased by the Ohio Funds were false at the times when the ratings were assigned.  Nor [did] the complaint allege that the Rating Agencies knew of specific deficiencies common to the collateral pools underlying all of the securities purchased by the Ohio Funds.  Without such allegations, the plaintiffs' claim could not avoid dismissal under Rule 12(b)(6)."  *Id.*  Nothing in Plaintiffs' current proposed supplement to the First Amended Complaint addresses any of these defects.

Defendants also submitted a recent decision from the Second Circuit Court of Appeals in August of this year that considered the very same class of security and ARS market collapse on which Plaintiffs in this action purport to base their claims.  That decision, which dismissed a claim against the Rating Agencies for negligent misrepresentation based exclusively on the credit ratings assigned to ARS that the plaintiff had purchased, emphatically rejected the argument that the plaintiff could allege a duty of care under New York law without alleging contact or a relationship of any kind with the Rating Agencies prior to its purchase.  *See* Letter from F. Abrams (Aug. 20, 2012), at 1 (citing *Anschutz Corp.* v. *Merrill Lynch & Co., Inc.*, No. 11-1305-cv, slip op. (2d Cir. August 14, 2012) (amended August 16, 2012), at 22).  As Defendants noted in their letter, the Second Circuit's analysis in *Anschutz* implicitly rejected the argument that status as a Qualified Institutional Buyer (QIB) and alleged member of an identifiable class of potential investors could somehow substitute for allegations of direct contact.  *Id.* at 1-2. Because "the plaintiffs in this action make a similar but even more attenuated argument, alleging only generally that they 'were part of a select and limited class of qualified investors to whom Defendants intended their ratings to be ultimately supplied,' FAC ¶ 128," the Second Circuit's analysis "makes clear that any such allegations, absent direct contact, are insufficient to trigger a duty of care under New York law." *Id.* at 2.  Defendants noted in their August 20 letter to the Court that the *Anschutz* opinion provides further support for the application of New York law in

this case: "[r]ejecting Anschutz's argument that California's Restatement-based law as to duty should be applied, the Court of Appeals declined to credit a purported 'fundamental interest' on the part of foreign jurisdictions in the prevention of allegedly fraudulent practices that occur entirely in New York." Nothing in Plaintiffs' proposed revision to the First Amended Complaint addresses these defects.

Considered against the extensive materials already submitted in support of Defendants' Motion to Dismiss, the proposed additions in Plaintiffs' First Amended and Supplemented Complaint do not, as Plaintiffs contend, identify timely "new information relevant to the original claims." Oct. 7, 2011 Brief, at 7. Nor do they cure the numerous case-dispositive defects already identified in Defendants' motion, as Plaintiffs appear to concede by addressing their argument for amendment exclusively to the current stage of this lawsuit and the generally permissive nature of Rule 15(d). Instead, the amendments pile only more generalized public commentary about credit rating agencies and non-ARS ratings onto Plaintiffs' existing allegations, without offering any response to the numerous pleading defects identified in Defendants' motion and without drawing any connection between the excerpted material that Plaintiffs seek to incorporate and the particular credit ratings or securities on which they base their claims. For the reasons set forth above and in each of Defendants' prior submissions, Plaintiffs' proposed First Amended and Supplemented Complaint is both untimely and insufficient to survive dismissal. Plaintiffs' Motion to Supplement should be denied and this case should be dismissed.

Dated:   September 20, 2012

Respectfully submitted,

_____ /s/ Floyd Abrams _____
Floyd Abrams (fabrams@cahill.com)
S. Penny Windle (pwindle@cahill.com)
Tammy L. Roy (troy@cahill.com)
CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York 10005
Telephone:  212-701-3000
Facsimile:  212-269-5420

*Attorneys for Defendants The McGraw-Hill
Companies, Inc. and Standard & Poor's
Financial Services LLC*

_____ /s/ Joshua M. Rubins _____
Joshua M. Rubins (jrubins@ssbb.com)
James J. Coster (jcoster@ssbb.com)
James Doty (jdoty@ssbb.com)
SATTERLEE STEPHENS BURKE & BURKE
LLP
230 Park Avenue
New York, New York 10169
Telephone: 212-818-9200

*Attorneys for Defendant Moody's Investors
Service, Inc.*

11