USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/27/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMERICAN SIGNATURE, INC. and SEI, INC.,

                Plaintiffs,

- against -

MOODY'S INVESTORS SERVICES, INC., THE MCGRAW-HILL COMPANIES, INC., d/b/a Standard & Poor's Rating Services, and STANDARD & POOR'S FINANCIAL SERVICES, LLC,

                Defendants.

**ORDER**

10 Civ. 5095 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiffs American Signature, Inc. and SEI, Inc. bring this action against The McGraw-Hill Companies, Inc., Standard and Poor's Financial Services, LLC[1] (together "S&P"), and Moody's Investors Services, Inc. ("Moody's") (collectively the "Rating Agencies" or "Defendants") pursuant to Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (the "Exchange Act"), and Rule 10b-5, 17 C.F.R. § 240.10b-5. Plaintiffs also assert claims for fraud, violation of Ohio's Blue Sky Law, negligent misrepresentation, and declaratory relief.

        Plaintiffs have moved pursuant to Fed. R. Civ. P. 15(d) for leave to supplement their Amended Complaint. (Dkt. No. 67) For the reasons set forth below, Plaintiffs' motion will be GRANTED.

---

[1] Standard and Poor's Financial Services, LLC is a subsidiary of The McGraw-Hill Companies, Inc. (Am. Cmplt. ¶ 13)

## BACKGROUND

Plaintiffs allege that they purchased auction rate securities ("ARS") through their former investment advisor, Lehman Brothers, Inc. ("Lehman"), based upon credit ratings issued by the Rating Agencies. (Am. Cmplt. ¶¶ 4, 8) Plaintiffs allege that the Rating Agencies assigned "over inflated and utterly baseless" ratings to these securities. (Id. ¶ 2) Plaintiffs further claim that Defendants' inflated ratings reflected their (1) desire "to convince the issuers to retain them"; (2) "participat[ion] in structuring those very securities that they were supposed to be rating objectively"; and (3) use of "ratings methodologies that they knew to be outdated, inappropriate and inapplicable." (Id.)

Plaintiffs directed Lehman to purchase only securities that carried high "investment grade" ratings from one of the major ratings organizations, including Defendants. (Id. ¶ 4) "In doing so, Plaintiffs relied upon [the Rating Agencies'] representations that their ratings were the product of current, unbiased, objective analyses and reflected [their] independent and good faith conclusions as to the creditworthiness of the rated securities." (Id.) "In reliance upon the unjustified investment grade ratings [the Rating Agencies] applied to ARS that were tied to subprime mortgage-related derivatives and/or to other securities dependent thereupon, Lehman purchased on Plaintiffs' behalf hundreds of millions of dollars worth of those ARS." (Id. ¶ 8) Plaintiffs allege that "[n]ow that the true risks of those securities have been revealed by the exploding subprime mortgage crisis, Plaintiffs are holding millions of dollars worth of securities that are essentially worthless." (Id.)

2

## PROCEDURAL HISTORY

On August 31, 2009, Plaintiffs filed a complaint against Defendants in Ohio state court[2] asserting claims for fraud, violation of Section 10(b) of the Exchange Act and Rule 10b-5, violation of Ohio's Blue Sky Law, and negligent misrepresentation. (Dkt. No. 2, Ex. A) On October 6, 2009, Defendants removed the case to the United States District Court for the Southern District of Ohio. (Dkt. No. 2)

Plaintiffs filed an Amended Complaint on December 4, 2009, adding a claim seeking a declaration that the First Amendment to the United States Constitution does not bar their claims. (Dkt. No. 20)

On January 11, 2010, Defendants filed a motion to dismiss. (Dkt. No. 25) On July 2, 2010, while the dismissal motion was still pending, a judge in the Southern District of Ohio granted Defendants' motion to transfer this case to the Southern District of New York. (Dkt. No. 41)

On October 7, 2011, Plaintiffs filed the instant motion for leave to file a supplemented first amended complaint. (Dkt. No. 67) Plaintiffs seek to supplement the Amended Complaint with extensive excerpts from the Final Report of the National Commission on the Causes of the Financial and Economic Crisis in the United States, issued by the Financial Crisis Inquiry Commission in January 2011 (the "FCIC Report"). (Proposed First Amended and Supplemented Complaint ("FASC"), Ex. V) Plaintiffs also seek to add extensive excerpts from "Wall Street and the Financial Crisis: Anatomy of Financial Collapse," a report issued by the United States Senate Permanent Subcommittee on Investigations on April 13, 2011 (the "Senate

---

[2] Plaintiff American Signature, Inc. is an Ohio corporation with its principal place of business in Ohio; Plaintiff SEI, Inc. is a Nevada corporation with its principal place of business in Ohio. (Am. Cmplt. ¶¶ 9-10)

3

Report"). (FASC, Ex. X) Finally, Plaintiffs wish to add excerpts from the testimony of Mark Froeba, a former Moody's vice president, before the FCIC ("Froeba Testimony").[3] (FASC, Ex. W) Defendants oppose Plaintiffs' motion, arguing that (1) the new allegations are not sufficiently related to the original Amended Complaint; and (2) adding the proposed supplemental material would be futile.[4] (Dkt. No. 73)

## DISCUSSION

### I. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 15(d),

> [o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

Fed. R. Civ. P. 15(d). "An application for leave to file a supplemental pleading is addressed to the discretion of the court. . . ." Bornholdt v. Brady, 869 F.2d 57, 68 (2d Cir. 1989). However, the court is permitted to grant a party leave to file a supplemental complaint only "when the supplemental facts connect it to the original pleading." See Quaratino v. Tiffany & Co., 71 F.3d 58, 66 (2d Cir. 1995); see also Fair Hous. in Huntington Committee v. Town of Huntington, N.Y., No. 02-CV-2787(DRH)(WDW), 2010 WL 4791787, at *9 (E.D.N.Y. Nov. 18, 2010)

---

[3] The FASC also contains a new citation to a Form 8-K filed by McGraw-Hill on September 26, 2011, disclosing that the SEC had sent it a Wells Notice concerning S&P's 2007 ratings for a certain collateralized debt obligation. (FASC ¶ 92) Although the FASC indicates that the Form 8-K is attached to the FASC as Exhibit Y, no such exhibit was filed with the Court. Accordingly, Plaintiffs' motion to supplement is denied as to this document.

[4] Defendants did not file their opposition brief until September 20, 2012, because they believed that Plaintiffs had violated Rule 3(A) of this Court's Individual Rules of Practice by failing to file a pre-motion letter in connection with their motion to supplement. Rule 3(A), however, addresses motions to amend, not motions to supplement. Accordingly, by order dated September 13, 2012, this Court directed Defendants to file any opposition to Plaintiffs' motion to supplement by September 20, 2012. (Dkt. No. 72)

("Under Rule 15(d), '[t]he threshold consideration for the district court is whether "the supplemental facts connect [the supplemental pleading] to the original pleading."'") (quoting Weeks v. N.Y. State Div. of Parole, 273 F.3d 76, 88 (2d Cir. 2011), abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002)); Sidari v. Orleans Cnty., 169 F. Supp. 2d 158, 163 (W.D.N.Y. 2000) ("[T]he proposed supplemental facts must be logically connected to the original pleading."). "As a general matter, Rule 15(d) 'reflects a liberal policy favoring a merit-based resolution of the entire controversy between the parties.'" Riverhead Park Corp. v. Cardinale, No. 07-CV-4133(ADS)(ARL), 2012 WL 3062135, at *2 (E.D.N.Y. July 26, 2012) (quoting Witkowich v. Gonzales, 541 F. Supp. 2d 572, 590 (S.D.N.Y. 2008)).

"'[T]he Rule 15(d) standard is functionally identical to the standard set forth in Rule 15(a).'" Roman Catholic Diocese of Rockville Ctr., N.Y. v. Inc. Vill. of Old Westbury, No. 09 CV 5195(DRH)(ETB), 2012 WL 1392365, at *5 (E.D.N.Y. Apr. 23, 2012) (quoting Instinet Inc. v. Ariel (UK) Ltd., No. 08 Civ. 7141(JFK)(RLE), 2011 WL 4444086, at *2 n.1 (S.D.N.Y. Sept. 26, 2011) (citing Gittens v. Sullivan, 670 F. Supp. 119, 123-24 (S.D.N.Y. 1987))); see also Milligan v. Citibank, NA, No. 00 Civ. 2793(AGS), 2001 WL 1135943, at *9 (S.D.N.Y. Sept. 26, 2001) ("Rule 15(d) motions are evaluated under the same standards as Rule 15(a) motions.").

Under Rule 15(a), the Court "should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). "A court should deny leave to amend or to serve a supplemental pleading only upon 'undue delay, bad faith or dilatory motive on the part of the [moving party], . . . undue prejudice to the [nonmoving party,] . . . [or] futility.'" Salazar v. Bowne Realty Assocs., L.L.C., 796 F. Supp. 2d 378, 383 (E.D.N.Y. 2011) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962) and citing Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 603-04 (2d Cir. 2005) (applying the Foman standard to a motion to amend

5

pursuant to Rule 15(a)); Quaratino, 71 F.3d at 66 (applying the Foman standard to a motion to serve a supplemental pleading pursuant to Rule 15(d))); see also Fair Hous. in Huntington Committee, 2010 WL 4791787, at *9 ("'[L]eave to supplement should be "freely permitted" absent "undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility."'") (quoting Weeks, 273 F.3d at 88 (quoting Quaratino, 71 F.3d at 66)).

## II. ANALYSIS

As noted above, the proposed FASC contains lengthy excerpts from two reports – the FCIC Report and the Senate Report – as well as testimony from a Moody's vice president before the FCIC. Plaintiffs assert that "[s]ince the First Amended Complaint was filed in December 2009, authoritative new information . . . has come to light that further supports Plaintiffs' allegations." (Pltfs. Br. 3) Plaintiffs argue that the reports are relevant because the FCIC and the Senate subcommittee – "[c]onsistent with Plaintiffs' allegations in this litigation" – "concluded that the credit-rating agencies, specifically Moody's and S&P, issued false and misleading ratings of mortgage-backed securities and similarly structured investments, knowing at the time that their ratings were either false or lacked sufficient factual support." (Id.)

Defendants counter that "many of the quotes that Plaintiffs seek to include in their proposed [FASC] make express and exclusive reference to non-ARS securities such as RMBS [residential mortgage-backed securities] or CDOs [collateralized debt obligations] . . . that are nowhere implicated by Plaintiffs' claims in this case." (Defs. Opp. Br. 4-5) Contrary to Defendants' contention, however, Plaintiffs' theory has always been that the ratings assigned to ARS were knowingly inflated, because they were dependent on ratings assigned to RMBS and CDOs that the Rating Agencies knew were inflated:

6

> [A]s Moody's and S&P knew, but concealed from Plaintiffs and the investment community, the ratings that Moody's and S&P assigned to the complex ARS purchased for Plaintiffs' accounts had no basis in fact because the ratings the Agencies applied to the subprime mortgage-related securities upon which the ARS ratings were ultimately derived and/or dependent were utterly meaningless.

(Am. Cmplt. ¶ 5; see also id. ¶ 2 (ARS ratings "did not reflect any review of the ARS but, rather, were . . . derived from the Rating Agencies' own ratings on subprime mortgage-related derivatives. . . . The ARS ratings, as well as the underlying ratings from which they were derived, were, thus, over inflated and utterly baseless. . . ."))

Indeed, the Amended Complaint alleges a symbiotic relationship between RMBS and CDO products, and ARS, and claims that inflated ratings were critical to the marketing of all three products:

> The current world-wide financial crisis was precipitated at least in part by widespread defaults on subprime mortgages – loans at higher rates made to borrowers with riskier credit histories.
>
> The impact of these defaults on the world's financial system was enormously magnified because the subprime mortgages were packaged together and securitized as complex structured debt securities, such as residential mortgage-backed securities ("RMBS") and collateralized debt obligations ("CDOs"). RMBS and CDOs related to them were sold to investors on a massive scale and spread the substantial risk of default on those subprime mortgages to virtually every corner of the globe.
>
> While RMBS and CDO securities were typically long-term securities purchased by investors seeking higher yields, <u>the damage caused by these risky and volatile securities was spread to conservative, short term investors such as Plaintiffs through the creation of Structured Product ARS</u>. These securities were marketed to investors such as Plaintiffs as safe, "cash equivalent" investments on the basis that they were highly rated and highly liquid, because they could be sold at auctions held as frequently as every seven days. However, <u>because Structured Product ARS were typically sold by specially created trusts or companies for the purpose of raising money that could be used to cover losses on investments in RMBS and CDOs, purchasers of the ARS were unwittingly taking on the risk of subprime mortgages. Indeed the more RMBS and CDO defaults that occurred, the more likely the ARS investors would lose their money.</u>

7

> The RMBS, CDOs and Structured Product ARS never could have been marketed widely without the substantial participation of the Rating Agencies. The issuance of and widespread distribution of such high risk debt securities depended upon their having received High Investment Grade Ratings from the . . . Rating Agencies. . . .

(Id. ¶¶ 18-21) (emphasis added)

In sum, the fact that the supplemental material makes reference to RMBS and CDOs rather than ARS does not require that Plaintiffs' motion be denied. The references to RMBS and CDOs are entirely consistent with earlier allegations made in the Amended Complaint. Similarly, the fact that the supplemental material contains "generalized, after-the-fact criticisms" of the Rating Agencies (Def. Opp. Br. 2 n.1) does not distinguish it from allegations already set forth in the Amended Complaint.[5] (See, e.g., Am. Cmplt. ¶¶ 24-25, 42-43, 47-48)

Plaintiffs' motion will not be denied on the basis that the proposed supplemental allegations are not "logically connected to the original pleading." Sidari, 169 F. Supp. 2d at 163. Moreover, there is no evidence that Plaintiffs have acted with undue delay, in bad faith, or with a dilatory motive, nor is there evidence that granting Plaintiffs' motion to supplement would result in unfair prejudice to the Rating Agencies. See Salazar, 796 F. Supp. 2d at 383.

The Rating Agencies argue, however, that Plaintiffs' motion to supplement should be denied on grounds of futility. (Defs. Opp. Br. 5-10) These arguments are largely duplicative of those set forth in Defendants' long-pending motion to dismiss, and in numerous letters submitted to the Court since this case was transferred. While it appears that some of Plaintiffs'

---

[5] Whether "generalized, after-the-fact criticisms" are probative on the question of whether the Rating Agencies knew that their ratings were false or misleading at the time is a matter that will be addressed in resolving the pending motion to dismiss.

8

claims may be susceptible to dismissal given recent case law,[6] the Court is not prepared to rule at this point that Plaintiff's case will be dismissed in its entirety, making the addition of the supplemental material futile. Any such finding must await further briefing from the parties, as discussed below.

The briefing on Defendants' motion to dismiss cites to Sixth Circuit or Southern District of Ohio decisions that are of little use to this Court. (See, e.g., Defs. MTD Br. 8-10, 12; Pltfs. MTD Opp. Br. 11-12) Supplemental briefing is necessary citing to the law in this Circuit.

Moreover, since Defendants filed their motion to dismiss in January 2010, a number of courts have issued decisions that shed light on the issues in this case. Some of this case law has been addressed by the parties in supplemental letter submissions, while some has not. In any event, the recent case law has not been addressed by either party in a cogent fashion. The Court requires additional briefing from the parties that synthesizes this new authority. The parties may also address, in their supplemental briefs, what effect, if any, the new material set forth in the FASC has on Defendants' motion to dismiss.

The parties' supplemental briefing will proceed on the following schedule:

---

[6] For example, in Anschutz Corp. v. Merrill Lynch & Co., Inc., 690 F.3d 98 (2d Cir. 2012), the Second Circuit rejected a negligent misrepresentation claim brought against rating agencies based on ratings they had assigned to ARS that the plaintiff had purchased. Noting that "there are no allegations of any direct contact between [plaintiff] and the Ratings Agencies," the court concluded that plaintiff had "failed to state a claim for negligent misrepresentation under New York law." Id. at 115. Anschutz appears to be directly on point.

Moreover, the Southern District of Ohio reached the same result in Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs., L.L.C., 813 F. Supp. 2d 871 (S.D. Ohio 2011), finding that "the negligent misrepresentation claim [against rating agencies] fails no matter whether New York or Ohio law applies," and also rejecting plaintiffs' claim for violations of Ohio's Blue Sky Law, finding that that statute "so clearly does not apply to the situation at hand." Id. at 878-79.

9

1. Plaintiffs' supplemental brief will be served and filed on **October 15, 2012**; and

2. Defendants' supplemental brief will be served and filed on **October 29, 2012**.

Plaintiffs will file a First Amended and Supplemented Complaint that conforms with this decision by October 3, 2012. Defendants need not file a pleading responsive to the First Amended and Supplemented Complaint at this time. The Court will deem Defendants' pending motion to dismiss – as supplemented by the briefing referenced above – as directed to the First Amended and Supplemented Complaint.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion for leave to supplement the Amended Complaint is granted. The Clerk of Court is directed to terminate the motion (Dkt. No. 67).

Dated: New York, New York
       September 27, 2012

                                  SO ORDERED.

                                  _____
                                  Paul G. Gardephe
                                  United States District Judge